*In re* R.E. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Ronnie Ellis, Sr., Respondent (Candie Nihiser, Respondent-Appellant)).

Fourth District    No. 4—00—0039

Opinion filed August 25, 2000.

COOK, P.J., specially concurring.

Lisa Holder White, Assistant Public Defender, of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In October 1990, the trial court adjudicated R.E. (hereinafter R.E. I) and R.E. (hereinafter R.E. II) (twins born in July 1986), the minor children of respondent, Candie Nihiser, neglected pursuant to section 2—3 of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, par. 802—3 (now 705 ILCS 405/2—3 (West 1998))), and placed them in the custody of the Department of Children and Family Services (DCFS).

In September 1998, the State filed a petition to terminate respondent's parental rights regarding R.E. I and R.E. II, alleging that respondent was an unfit parent because she (1) had an habitual addiction to drugs (750 ILCS 50/1(D)(k) (West 1998)), (2) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children, and (3) failed to make reasonable progress toward their return to her within nine months of the adjudication of neglect (750 ILCS 50/1(D)(m) (West 1998)). In September 1999, the State withdrew the ground alleged in its first count and the trial court found respondent unfit on the second and third grounds alleged. In October 1999, the court held a hearing on the children's best interests, and in January 2000, the court entered an order terminating respondent's parental rights as to R.E. I and R.E. II.

Respondent appeals, arguing that the trial court's findings regarding parental unfitness and the children's best interests were against the manifest weight of the evidence. We reverse.

## I. BACKGROUND

In its August 1990 petition for adjudication of wardship, the State alleged that R.E. I and R.E. II were neglected because respondent did not provide the care necessary for their well-being, including adequate shelter. At the August 1990 shelter-care hearing, the trial court found probable cause to believe R.E. I and R.E. II were neglected and ordered that they be placed in a shelter-care facility. In October 1990, the trial court entered a dispositional order, which adjudicated R.E. I and R.E. II (then each 4½ years old) neglected, made them wards of the court, and appointed DCFS as their guardian with the power to place them. DCFS then placed them in the first of the foster homes they were to live in over the next 9½ years.

In September 1998, the State filed the instant petition to terminate respondent's parental rights. Another year passed before the State's petition came to a hearing. At the September 1999 hearing on the State's petition, Carla Gray, a child protective investigator with DCFS, testified to observations she made while she was respondent's caseworker between February 1996 and October 1997. Pam Cremeans, a child welfare specialist with DCFS, testified that she took over the case in December 1997 and worked with respondent and the twins until February 1999. Nancy Jorgesen, a child welfare specialist with the Baby Fold, testified about respondent's visits with R.E. I. James Leeds, a caseworker for Catholic Social Services, testified that he had been R.E. II's caseworker since 1998 and described his experiences with R.E. II and respondent.

Respondent testified that during the early 1990s she did not understand what DCFS was asking of her. The bulk of her testimony related to her current understanding of the twins' medical, emotional, and behavioral problems, and her attendance at visitations and counseling.

At the close of the hearing, the trial court found that the State had proved by clear and convincing evidence that respondent (1) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children and (2) failed to make reasonable progress toward the return of the children within nine months after the adjudication of neglect. After a dispositional hearing in October 1999, the court found that it was in the children's best interests that respondent's parental rights be terminated. In January 2000, when the twins were 13½ years old, the court entered an order terminating respondent's parental rights as to them. This appeal followed.

## II. ANALYSIS

■ Section 1(D)(m) of the Adoption Act (Act) provides, in relevant part, as follows:

"The grounds of unfitness are any *** of the following:

&ast; &ast; &ast;.

(m) Failure by a parent to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected *** minor ***." 750 ILCS 50/1(D)(m) (West 1998).

In *In re D.L.*, 191 Ill. 2d 1, 10, 727 N.E.2d 990, 994 (2000), the Supreme Court of Illinois held that, pursuant to section 1(D)(m) of the Act, the only matters that are relevant to a reasonable progress or reasonable efforts analysis are those that occurred within the applicable period, in this case nine months. In *In re D.S.*, 313 Ill. App. 3d 1020, 1027-28, 730 N.E.2d 637, 643 (2000), this court held that the relevant nine-month period commences with the trial court's filing of the dispositional order completing the adjudication of neglect.

■ The relevant nine-month period in this case began in October 1990. However, at the hearing on the State's petition to terminate respondent's parental rights, the State presented virtually no evidence related to events that occurred during that nine-month period. Because (1) the trial court obviously based its decision on evidence pertaining to matters outside the relevant time period, and (2) the record contains essentially no probative evidence regarding the relevant time period, we reverse in accordance with the supreme court's holding in *D.L.*

We have searched the record for a satisfactory explanation for the State's seven-year delay in seeking termination of respondent's parental rights. We have found none. In searching through this record, however, we discovered that (1) R.E. I and R.E. II were removed from respondent's care when they were four years old; (2) their emotional and behavioral problems were immediately apparent to DCFS, and DCFS had difficulty keeping them in foster homes; (3) they were diagnosed with fetal alcohol syndrome and fetal alcohol effect in 1992; (4) one of the boys has also been diagnosed with attention deficit hyperactivity disorder; (5) by the time of the hearing on the termination petition, the boys (a) were in their early teens, (b) exhibited aggressive behavior, and (c) were described as agitated, active, and full of anxiety; and (6) DCFS had no adoptive prospects for them. The record before us suggests that the State's failure to seek termination of respondent's parental rights while these boys were young and desperately in need of permanent placement is beyond comprehension. The delay in pursuing permanent homes for these boys has greatly decreased the chance that either of them will ever experience a meaningful and stable parental bond.

The special concurrence states that there is a lot we do not know

about this case. That is, of course, true as it is in all of the cases that come before us on appeal, consisting only of the "cold record"—that is, transcripts of pertinent hearings and documents that comprise the common-law record. At the same time, there is a lot we do know about this case, as our recitation of the record shows. We acknowledge the possibility that, despite an absence from the record, circumstances could exist that would mute some of the concerns we have expressed in this opinion. Nonetheless, given the apparent circumstances of this case, we continue to believe that these concerns should be expressed.

Regarding the twins' adoptability, they certainly are no more adoptable as teenagers than they were when they were five or six years old. Yet the State has decided to seek termination of respondent's parental rights at this late date, despite the absence of any prospective adoptive parents on the horizon. If the absence of prospective adoptive parents were responsible for the State's failure to timely seek to terminate respondent's parental rights, then what has changed to explain the State's taking action now?

Every child deserves a stable, loving, secure, *and permanent* home. When children in this state are abused or neglected, DCFS, the State's Attorneys, and the courts have the authority—and the responsibility—to intervene to protect those children. In this case, all of the players in the child welfare system, who are entrusted by the citizens of Illinois to protect our children, failed to protect these two children. On behalf of the State of Illinois, we apologize to them (knowing full well that our apology is small consolation indeed).

By referring to the State's failure to file a petition to terminate respondent's parental rights in a timely manner, we do not mean to imply that the State's Attorney bears more responsibility for this unconscionable result than DCFS or the trial court. DCFS could have, and should have, demanded that the State's Attorney take action in this case as soon as it became apparent that the twins were troubled young boys and respondent was failing to comply with DCFS service plans.

Likewise, the trial court is not off the hook. See the special concurrence in *In re A.T.*, 197 Ill. App. 3d 821, 835-36, 555 N.E.2d 402, 412 (1990) (Steigmann, J., specially concurring):

> "Trial courts must bear in mind that the formal order entered at the dispositional hearing (when the court finds the best interest of an abused or neglected child so requires) is to adjudicate the child a *ward of the court*. [Citation.] The statute does *not* say a 'ward of DCFS' or a 'ward of the State's Attorney.' Section 2—28 of the Act [citation] provides the mechanism for periodic review by the *court* of the status of *its wards*. Part of the court's review always should

be an inquiry as to whether its wards have permanent homes, and, if not, why not." (Emphasis in original.)

The trial court in this case failed to look after two of its wards. (We add that our reference to the "trial court" in this case is generic and not intended to reflect the particular judge who happened to preside over the most recent hearings regarding the twins.)

We acknowledge the legislature's recognition that it is in the best interests of children and the State to promote the reunification of parents and their children whenever possible. However, the legislature has also recognized the problems that lingering foster care present, and in 1997 the legislature attempted to address that concern by shortening the relevant time period under section 1(D)(m) of the Act from 12 to 9 months. Pub. Act 90—28, art. 10, § 10—25, eff. June 25, 1997 (1997 Ill. Laws 1498, 1576). When pursuing the goal of reunification puts young and troubled children in an interminable state of limbo, which only serves to perpetuate their distress, the State must abandon the goal of reunification and make every effort to afford such children some semblance of stability and comfort. R.E. I and R.E. II deserved no less. We sincerely hope that the State of Illinois can do more for their future than it has for their past.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

KNECHT, J., concurs.

PRESIDING JUSTICE COOK, specially concurring:

I concur in the reversal of the order terminating parental rights, but I question our criticism of DCFS, the State's Attorney, and the trial court. The opinion indicates that these two teenagers are troubled and that DCFS had no adoptive prospects for them. 315 Ill. App. 3d at 947. That fact, alone, seems to be "a satisfactory explanation for the State's seven-year delay in seeking termination of respondent's parental rights." 315 Ill. App. 3d at 947. Termination of parental rights is often a useless effort if no permanent placement is available.

The parties have not been given an opportunity to respond to the issues raised by the majority. There is much we do not know about this case. We should limit ourselves to deciding this appeal and avoid sweeping pronouncements that we base on assumptions gleaned from facts not before us.