2024 IL App (4th) 240583-U

NOS. 4-24-0583, 4-24-0584, 4-24-0590, 4-24-0591 cons.

<table>
<tr><td>

**NOTICE**
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

</td><td>

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

</td><td>

FILED
August 14, 2024
Carla Bender
4th District Appellate
Court, IL

</td></tr>
</table>

| | | |
|---|---|---|
| *In re* A.S., Ab.S., Ar.S., and I.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Knox County |
|       Petitioner-Appellee, | ) | Nos. 19JA35 |
|         v. | ) |      21JA37 |
| Jessica M., | ) |      21JA38 |
|       Respondent-Appellant). | ) |      21JA39 |
| | ) | |
| | ) | Honorable |
| | ) | Curtis S. Lane, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights.

¶ 2    Respondent Jessica M. appeals from the trial court's judgment finding her unfit and terminating her parental rights as to her four minor children: Ar.S. (born in 2019), I.S. (born in 2016), A.S. (born in 2015), and Ab.S. (born in 2014). The father, Eric S., surrendered his parental rights to all four minors in February 2023 and is not a party to this appeal.

¶ 3    Respondent's appointed counsel seeks leave to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). In the supporting memorandum of law filed in each of these four consolidated cases, appellate counsel contends this appeal presents no potentially meritorious

issues for review. Notice of the motion to withdraw was provided to respondent. She did not file a response. We grant the motion and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5                    A. Neglect Petitions, Adjudications, and Dispositions

¶ 6                              1. *A.S., Ab.S., and I.S.*

¶ 7          In November 2017, the State filed separate petitions for adjudication of wardship of A.S., Ab.S., and I.S. in Warren County. Specifically, the State alleged A.S. and Ab.S. were abused (705 ILCS 405/2-3(2)(i) (West 2016)) and neglected (*id.* § 2-3(1)(b)) in that both minors were found to have bruising all over their bodies caused by other than accidental means. The State further alleged I.S. was neglected due to being in an environment injurious to his welfare (*id.*) based on the alleged abuse of his siblings. The trial court held a hearing and granted temporary custody of the minors to the Illinois Department of Children and Family Services (DCFS).

¶ 8          In January 2018, the trial court adjudicated A.S., Ab.S., and I.S. neglected. In March 2018, the court entered a dispositional order finding respondent unfit and made the minors wards of the court. In June 2020, the cases were transferred to Fulton County. In September 2021, the cases were transferred to Knox County.

¶ 9                                      2. *Ar.S.*

¶ 10          In October 2019, the State filed a juvenile petition in Knox County alleging that Ar.S. was neglected due to being in an environment injurious to her welfare (705 ILCS 405/2-3(1)(b) (West 2018)), in that the minor presented at an emergency room with multiple burns and was later found to have a minimally compressed skull fracture. The trial court held a hearing and granted temporary custody of Ar.S. to DCFS.

¶ 11    In February 2020, the trial court adjudicated Ar.S. neglected. Thereafter, the court entered a dispositional order finding respondent unfit and making Ar.S. a ward of the court.

¶ 12    B. Petitions for Termination of Parental Rights

¶ 13    In March 2023, the State filed separate petitions to terminate the parental rights of respondent as to A.S., Ab.S., Ar.S., and I.S. The State alleged respondent was unfit based on her failure to (1) make reasonable efforts to correct the conditions which were the basis for the removal of the minors within the relevant nine-month periods (750 ILCS 50/1(D)(m)(i) (West 2022)) (count I), (2) make reasonable progress toward the return of the minors within the relevant nine-month periods (*id.* § 1(D)(m)(ii)) (count II), and (3) maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (*id.* § 1(D)(b)) (count III). The relevant nine-month periods for counts I and II were October 20, 2020, to July 20, 2021; July 20, 2021, to April 20, 2022; and May 7, 2022, to February 7, 2023.

¶ 14    C. Fitness Hearing

¶ 15    In December 2023, the matter proceeded to a fitness hearing. Respondent was not present.

¶ 16    Brooke Matykiewicz, a DCFS child welfare specialist, testified she was the caseworker from December 2020 to November 2022. Under the service plan, respondent was required to maintain housing and employment, cooperate with DCFS, and complete mental health services, parenting education, drug testing, and domestic violence treatment. The only service respondent completed was the domestic violence treatment. In her interactions with DCFS, Matykiewicz described respondent as "extremely argumentative" and "combative." Respondent refused to speak with Matykiewicz without an attorney present and otherwise only communicated via text message. She also failed to provide Matykiewicz with information concerning her finances

and housing. Respondent did not sign releases with her mental health provider, so Matykiewicz could not confirm if she cooperated with her mental health services. Respondent also failed to submit to any drug testing during the relevant period. Visitation with the children was suspended in January 2022 after respondent threatened the children and the visitation specialist.

¶ 17    Jessica Flora, a DCFS supervisor, testified she was assigned to the minors' cases from February 2022 to June 2023. Flora was present for two "child and family" team meetings with Matykiewicz and respondent. During those meetings, Flora described respondent as "combative" and becoming upset when given information "that she doesn't like to hear or that she feels is wrong." Flora decided not to restart respondent's visitation following the suspension, as the children had experienced "extensive trauma" by respondent, which caused "reactive behaviors" in the children following visits.

¶ 18    Nicolette Fox, a DCFS child welfare specialist, testified she had been the caseworker since November 2022. After she took over the case, Fox tried to contact respondent, who did not respond to Fox until January 2023. During the relevant period, Fox was unable to verify if respondent had stable housing or income. Further, respondent did not complete any services, nor did she send any gifts, cards, or letters to the children. Respondent self-referred for mental health services rather than going through a DCFS referral, so Fox was denied access to respondent's therapy notes and could not assess her progress.

¶ 19    Following argument by the parties, the trial court found respondent unfit as to counts I and II of the petitions.

¶ 20    D. Best Interest Hearing

¶ 21    In January 2024, the matter proceeded to a best interest hearing, with respondent in attendance.

¶ 22    Fox testified the children were originally placed in the same foster home, but due to behavioral issues, Ab.S. was moved to another foster home. Her behavioral issues improved considerably after the move. Ab.S. continued to attend the same school district as the other children. Fox described Ab.S. as "very bonded" to her new foster parents and their extended family. Ab.S. informed Fox that she wanted to be adopted by her foster parents and now used her foster parents' last name. Fox stated that Ab.S. felt loved and secure in her foster home, and the home would be a "good" and "stable" placement for the child. Thereafter, due to time constraints, the trial court continued the best interest hearing to a later date.

¶ 23    The best interest hearing resumed in March 2024. The trial court admitted the best interest report filed December 21, 2023, and a status alert filed March 12, 2024. The status alert contained visitation recommendations from the children's therapists. The therapists recommended no further contact between respondent and the children, as their prior visits were "emotionally traumatizing" and created "intense fear and anxiety" for the children.

¶ 24    The State recalled Fox, who testified that all four children had bonded with their respective foster parents and were well adjusted and felt loved in their foster homes. The foster parents provided for the children's needs and regularly took the children to counseling and medical appointments. Fox stated the minors had been in care since 2017, a period of approximately six and a half years.

¶ 25    Jodi W. testified that she was the foster mother of A.S., Ar.S., and I.S. Jodi indicated the children enjoyed their school and had good relationships with her extended family. All three children refer to Jodi as "Mom." Jodi stated she would facilitate a relationship between Ab.S. and her siblings. Jodi expressed her willingness to adopt the children.

¶ 26 Respondent testified that the last time she visited with the children was in January 2022. She indicated that the children told her they were being abused in their foster home. Respondent claimed her visitation was revoked after she reported this to the caseworker. Although respondent asked about reinstating visitation, she was told it could not resume until a judge lifted a no-contact order that was issued against her.

¶ 27 The trial court stated it reviewed the best interest report, the Court Appointed Special Advocates reports, and the status alert. At the time of the hearing, Ab.S., A.S., and I.S. had been in care for over 2200 days, and Ar.S. had been in care for over 1500 days. The court noted the last contact respondent had with the children was in January 2022, when visitation was suspended. The court also noted that the children's counselors recommended no more contact with respondent to prevent further trauma. The court also found that the children were attached to their foster families. The court further found that the foster parents provided the children with security, familiarity, and affection, development of their identities, and integration into their communities. The children expressed their wishes to be adopted, and their foster families were willing to adopt them.

¶ 28 The trial court found it was in the children's best interest to terminate respondent's parental rights. The court entered separate orders terminating respondent's parental rights with respect to each child. Thereafter, respondent filed separate notices of appeal in each of the cases. On our own motion, we consolidated the appeals for review.

¶ 29                                     II. ANALYSIS

¶ 30 Appellate counsel moves for leave to withdraw pursuant to *Anders* from respondent's appeals with respect to each child. See *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000) (holding *Anders* applies to termination of parental rights cases and providing the proper procedure

to be followed by appellate counsel). Counsel supports his motion with a memorandum, which states he considered raising the following issues: whether the trial court erred when it found (1) respondent failed to make reasonable progress towards the return of the minors during the relevant nine-month period, (2) respondent failed to make reasonable efforts to correct the conditions that brought the minors into care during the relevant nine-month period, and (3) the best interest of the children favored termination of respondent's parental rights. Counsel ultimately determined that any argument challenging the court's fitness and best interest findings would be frivolous and without merit. We agree with counsel, grant his motion to withdraw, and affirm the court's judgment.

¶ 31                                    A. Unfitness

¶ 32          The involuntary termination of parental rights involves a two-step process pursuant to section 2-29(2) of the Juvenile Court Act of 1987 (705 ILCS 405/2-29(2) (West 2022)). The State must first prove by clear and convincing evidence that the respondent is unfit. *In re C.M.*, 305 Ill. App. 3d 154, 163 (1999).

¶ 33          The trial court in this case found respondent unfit for failing to (1) make reasonable efforts to correct the conditions which were the basis for removal of the minors during the relevant nine-month period (750 ILCS 50/1(D)(m)(i) (West 2022)) and (2) make reasonable progress towards the return of the minors during the relevant nine-month period (*id.* § 1(D)(m)(ii)). However, "[a] parent's rights may be terminated if a single alleged ground for unfitness is supported by clear and convincing evidence." *In re D.C.*, 209 Ill. 2d 287, 296 (2004). As such, we only address appellate counsel's contention that it would be frivolous to argue the court erred in finding respondent failed to make reasonable progress towards the return of the children during the relevant nine-month period.

¶ 34    Reasonable progress, which is assessed under an objective standard, exists when a parent's compliance with the service plan and the trial court's directives "is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991). "Failure to make reasonable progress toward the return of the minor includes the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care." *In re D.T.*, 2017 IL App (3d) 170120, ¶ 17 (citing 750 ILCS 50/1(D)(m) (West 2014); *In re C.N.*, 196 Ill. 2d 181, 217 (2001)).

¶ 35    We will not reverse a trial court's finding of unfitness unless it is against the manifest weight of the evidence. *C.M.*, 305 Ill. App. 3d at 163. A court's finding is against the manifest weight of the evidence where the facts clearly demonstrate the court should have reached the opposite conclusion. *C.N.*, 196 Ill. 2d at 208.

¶ 36    Respondent in this case almost entirely failed to comply with the objectives under the service plan. During the period of May 7, 2022, to February 7, 2023, she did not complete any drug tests or parenting education. Her caseworkers could not verify her mental health progress, as respondent sought treatment on her own rather than through a DCFS referral. Respondent also failed to provide any information regarding her housing or employment. Although she inquired about reinstating visitation on a few occasions, it remained suspended during the entire relevant period and was still suspended at the time of the fitness hearing. Further, respondent refused to cooperate with her DCFS caseworkers. Both Matykiewicz and Flora described respondent as combative and unwilling to work with them. After Fox took over the case in November 2022, respondent did not contact her until January 2023. Thereafter, Fox had only a few phone calls with respondent, and she would message Fox "probably once every six weeks at the most."

¶ 37 Based on the foregoing, the trial court was no closer to returning the children to respondent's care by the end of the nine-month period. See *L.L.S.*, 218 Ill. App. 3d at 461. Therefore, we cannot say the court's finding of unfitness was against the manifest weight of the evidence.

¶ 38 Having reviewed the record, we agree with appellate counsel that there is no nonfrivolous argument that could be presented on appeal to challenge the trial court's unfitness determination.

¶ 39 B. Best Interest

¶ 40 If the parent is found to be unfit, the State must then prove terminating parental rights is in the minor's best interest. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 31. At this step, the focus shifts from the parent to the child. See *In re D.T.*, 212 Ill. 2d 347, 364 (2004) ("[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life."). As such, the burden on the State is lessened to a preponderance of the evidence at the best interest hearing. *Id.* at 366.

¶ 41 In reaching a best interest determination, the trial court must consider, within the context of the child's age and developmental needs, the following factors:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the

risks related to substitute care; and (10) the preferences of the person available to care for the child." (Internal quotation marks omitted.) *J.B.*, 2019 IL App (4th) 190537, ¶ 32 (citing 705 ILCS 405/1-3(4.05) (West 2018)).

¶ 42        The trial court's best interest determination will not be disturbed on appeal unless it is against the manifest weight of the evidence. *J.B.*, 2019 IL App (4th) 190537, ¶ 33. We afford great deference to the court's determination, as it is in the best position to view the witnesses and judge their credibility. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71.

¶ 43        At the time of the hearing, Ab.S., A.S., and I.S. had been in care for about six years, and Ar.S. had been in care for about four years. Further, the children had not seen respondent in over two years. Visitation with respondent was never restarted, as prior visits resulted in emotional trauma to the children. The evidence demonstrated the foster parents provided for the children's needs, including their physical safety and welfare; development of their identities; community ties; and security, familiarity, and affection. The children expressed a desire to stay with their foster families, and the foster parents expressed a willingness to adopt the children. Based on the foregoing, we cannot say the trial court's best interest determination was against the manifest weight of the evidence.

¶ 44        After reviewing the record, we agree with appellate counsel that any argument challenging the trial court's best interest determination would be without merit.

¶ 45                                III. CONCLUSION

¶ 46        For the reasons stated, we affirm the trial court's judgment.

¶ 47        Affirmed.