NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240707-U

NOS. 4-24-0707, 4-24-0708, 4-24-0709 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 11, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Se. B., Sh. B., and St. B., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Logan County |
| Petitioner-Appellee, | ) | Nos. 22JA4 |
| v. | ) | 22JA5 |
| Andrea B., | ) | 22JA6 |
| Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | Jonathan C. Wright, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights.

¶ 2    Respondent Andrea B. appeals from the trial court's judgment terminating her parental rights to her three minor children, Se. B. (born in 2010), Sh. B. (born in 2009), and St. B. (born in 2007). Counsel appointed to represent respondent on appeal now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing respondent's appeal presents no issues of arguable merit for review. See *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000) (holding *Anders* applies to termination of parental rights cases and providing the proper procedure to be followed by appellate counsel). We agree, grant appellate counsel's motion to withdraw, and affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                 A. Adjudication of Wardship

¶ 5            In February 2022, the State filed petitions for adjudication of wardship, alleging the minors were neglected pursuant to section 2-3(1)(a) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a) (West 2022)) because they were not receiving the proper or necessary support or care necessary for their well-being, specifically that their father, Sean B., did not make a proper care plan for the minors. As to Se. B. and Sh. B., the petitions also alleged the minors were neglected in that they were under the age of 14 and left without supervision for an unreasonable period of time (*id.* § 2-3(1)(d)).

¶ 6            Following a shelter care hearing, the trial court found probable cause to support the allegations of neglect and placed temporary guardianship and custody with the Illinois Department of Children and Family Services (DCFS). Respondent appeared at a subsequent hearing in April 2022 by video and was appointed counsel.

¶ 7            The adjudicatory hearing was held in July 2022, with respondent in attendance via video. Sean B. admitted to the allegation the minors were neglected due to not receiving proper or necessary support or care necessary for their well-being. The State presented a factual basis to support the admission, and the trial court adjudicated the minors neglected pursuant to the admission.

¶ 8            Respondent was not present at the August 2022 dispositional hearing. The trial court found respondent unfit to care for the minors. The finding was consistent with a prior order in an ongoing Winnebago County case finding respondent unfit, and she remained unfit in that case at the time of the dispositional hearing. The court made the minors wards of the court and placed guardianship and custody with the guardianship administrator of DCFS.

¶ 9                      B. Petition for Termination of Parental Rights

¶ 10          In November 2023, the State filed petitions to terminate parental rights as to each minor. The petitions alleged respondent was an unfit person under the Adoption Act (750 ILCS 50/1(D) (West 2022)) in that she had (1) abandoned the minors (*id.* § 1(D)(a)); (2) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (*id.* § 1(D)(b)); (3) deserted the minors for more than three months preceding the commencement of the termination proceedings (*id.* § 1(D)(c)); (4) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors during any nine-month period following the adjudication of neglect, specifically, July 29, 2022, to April 29, 2023, and February 21, 2023, to November 21, 2023 (*id.* § 1(D)(m)(i)); (5) failed to make reasonable progress towards the return of the minors during any nine-month period following the adjudication of neglect, alleging the same nine-month periods (*id.* § 1(D)(m)(ii)); and (6) intended to forgo her parental rights, as evidenced by her failure for a period of 12 months to (a) visit the minors, (b) communicate with the minors or agency, although able to do so and not prevented by the agency or a court order, or (c) maintain contact with or plan for the future of the minors, although able to do so (*id.* § 1(D)(n)(1)).

¶ 11                            1. *The Fitness Hearing*

¶ 12          In March 2024, the trial court conducted the fitness hearing. Respondent was present via Zoom.

¶ 13          Ashley Brinner testified she was assigned as the caseworker for the minors in February 2022. She was the caseworker from February 2022 to June 2023 and December 2023 to the present date. Brinner testified an integrated assessment was completed for the family, but respondent was not interviewed. Brinner spoke on the phone with respondent at the beginning of

the case in spring 2022, and there was some communication, but respondent had not returned calls, e-mails, or text messages since then. In April 2023, Brinner sent copies of letters written by St. B. and Se. B. to the same e-mail address she had previously contacted, and respondent replied requesting a meeting. The meeting was scheduled and canceled three times by respondent, and respondent then ceased communication. Brinner had no contact with respondent after April 2023.

¶ 14 Respondent was required to engage in services, including cooperating with the agency, obtaining stable housing and employment, and completing mental health and substance abuse services. Brinner was not able to review the service plan with respondent because she was not in contact with her, so she sent a copy of the service plan to her by either mail or e-mail. She did not receive a response. Respondent never verified her housing situation. When Brinner visited respondent's last known residence, in Rockford, Illinois, the house was empty. Respondent did not verify her employment. She did not sign any consents for referrals for mental health or substance abuse services. Overall, respondent's progress was "completely unsatisfactory."

¶ 15 Brinner also testified respondent had not had any contact with the children during the life of the case. Brinner had been told the last time respondent had any sort of contact with the children was at St. B.'s eighth-grade graduation, approximately three years prior. DCFS had placed a restriction on visits in respondent's file, but only in-person contact was restricted.

¶ 16 Bailey Volle testified she was the caseworker from June 2023 to December 2023. While Volle was managing the case, respondent made no efforts to "cooperate with the agency, contact [her], or contact anybody within the department."

¶ 17 Respondent testified she lived in Rockford and had been employed as a certified nursing assistant for about 23 years and had worked at her present employer for 6 or 7 years. Respondent was confident she had informed a caseworker of where she worked. She was receiving

mental health counseling at "Remedy" in the Winnebago County courthouse, and she had sought out substance abuse counseling on her own at Rosecrance. She was looking for proper housing for herself and the minors. Respondent stated she was "participating in [her] own way." She had not personally seen the children in three years.

¶ 18 Respondent disconnected from the proceeding after her testimony. She informed her counsel she had accidentally disconnected, and counsel directed her to rejoin the hearing. She did not, however, reappear, and the hearing continued in her absence. During closing arguments, respondent rejoined the hearing.

¶ 19 The trial court found respondent unfit for (1) failing to make reasonable efforts during the relevant time periods, (2) failing to make reasonable progress during the relevant time periods, (3) failing to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare, and (4) showing her intent to forgo her parental rights, as evidenced by her failure for a period of 12 months to communicate with the children while able to do so and not prevented by the agency or a court order. The court also found that the State did not meet its burden of proof on the allegations that respondent (1) abandoned the minors or (2) deserted the minors.

¶ 20                                         2. *The Best Interest Hearing*

¶ 21 The trial court proceeded directly to the best interest hearing.

¶ 22 David B. testified he was the foster father for the minors. This was the third time he and his wife, Nicole B., were fostering the minors. David worked from home and was "always available," and he and Nicole split primary care responsibilities. David expressed that he and Nicole would like to adopt the minors, and the minors had expressed to him that they wished to be adopted. The children had "zero contact" with respondent since St. B. graduated eighth grade.

¶ 23　　　　St. B. testified she was 16 years old and a junior in high school. She had been in and out of her current foster placement for seven years, with the current placement being for a little over two years. She called her foster parents "mom" and "dad," and she had started referring to them as her parents before the current placement. St. B. wished to stay with her foster parents and be adopted by them. She believed her siblings felt the same way. She felt their foster parents took care of them, and she felt safe in their home. The last time St. B. saw respondent was at her eighth-grade graduation, and she had not had any contact with respondent since then.

¶ 24　　　　Respondent testified she wanted to remain the mother of the minors, and she believed it was in their best interest for her to remain their mother.

¶ 25　　　　The trial court considered this was the fourth time the minors had been in care and the third time they had been in the care of David and Nicole. The court opined it was "clear they put down roots" and that the foster parents were "for all practical purposes, their mother and father." The court found the foster parents provided physical and emotional support, and the best interest report noted that all three minors wished to be adopted by the foster parents. The court determined it was in the best interest of the minors to terminate respondent's parental rights.

¶ 26　　　　This appeal followed.

¶ 27　　　　　　　　　　　　II. ANALYSIS

¶ 28　　　　Appellate counsel now moves to withdraw on appeal pursuant to *Anders* and argues that the appeal of this case presents no potentially meritorious issues for review. See *S.M.*, 314 Ill. App. 3d at 685-86. Counsel states he has reviewed the common law record and report of proceedings for the termination proceedings, and he has identified two potential issues for review: (1) whether the trial court's determination that respondent was unfit was against the manifest weight of the evidence and (2) whether the court's determination that termination of respondent's

parental rights was in the best interest of the minors was against the manifest weight of the evidence. Counsel provided respondent notice of the motion to withdraw, and respondent has not filed a response. After reviewing the record and appellate counsel's memorandum, we agree with counsel that this appeal presents no issues of potential merit, and therefore we grant the motion to withdraw and affirm the court's judgment.

¶ 29                                    A. Unfitness Finding

¶ 30        Section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2022)) provides for a two-step process to involuntarily terminate parental rights. The State must first prove by clear and convincing evidence that the respondent is "unfit" as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re N.G.*, 2018 IL 121939, ¶ 28.

¶ 31        In this case, the trial court determined respondent was unfit for (1) failing to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) failing to make reasonable efforts to correct the conditions that were the basis for the removal of the minors during the relevant nine-month time periods (*id.* § 1(D)(m)(i)); (3) failing to make reasonable progress towards the return of the minors during the relevant nine-month time periods (*id.* § 1(D)(m)(ii)); and (4) showing her intent to forgo her parental rights, as evidenced by her failure for a period of 12 months to communicate with the minors, although able to do so and not prevented by the agency or a court order (*id.* § 1(D)(n)(1)). However, a "parent's rights may be terminated if a single alleged ground for unfitness is supported by clear and convincing evidence." *In re D.C.*, 209 Ill. 2d 287, 296 (2004). Therefore, we focus only on the first ground, that respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare.

¶ 32        The Illinois Supreme Court has held that, in addressing a parent's fitness under section 1(D)(b), the trial court "is to examine the parent's efforts to communicate with and show interest in the child, not the success of those efforts." *In re Adoption of Syck*, 138 Ill. 2d 255, 279 (1990). The trial court is in a superior position to observe witnesses and evaluate their credibility. *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002). Accordingly, the court's findings regarding parental unfitness are afforded great deference and will not be reversed unless they are against the manifest weight of the evidence. *Id.* "A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident." *In re C.N.*, 196 Ill. 2d 181, 208 (2001).

¶ 33        Here, the evidence demonstrated that respondent failed to make any efforts to communicate with or show any interest, concern, or responsibility as to the minors. Brinner testified that although there was "some communication" at the beginning of the case, respondent then failed to respond to calls, text messages, and e-mails. While Volle was handling the case, she had no contact with respondent outside of a court hearing, which respondent attended by video. In April 2023, respondent reached out to Brinner for a meeting after receiving copies of letters from two of the minors, but she then rescheduled that meeting three times before once again falling out of contact.

¶ 34        By her own admission, respondent last spoke with the minors three years prior to the hearing, well before the incident which led to the minors being taken into care. Although DCFS had placed a restriction on in-person visits for respondent, there were no restrictions preventing other forms of contact, and respondent knew the foster parents. Brinner testified respondent had no contact with the minors by e-mail, phone, letter, or any other form of communication. At the time of the fitness hearing, the case had been ongoing for a little over two years; however,

respondent was still "looking for proper housing" suitable for the minors. Instead of working with DCFS, respondent believed she was participating "in [her] own way."

¶ 35    In sum, respondent had been out of contact with the minors before this case began, and nothing presented demonstrated she made any attempts to reform a relationship with her children during the life of the case. Therefore, it would be frivolous to argue the trial court's finding of respondent's unfitness was against the manifest weight of the evidence.

¶ 36                    B. Best Interest Determination

¶ 37    If a trial court finds a parent to be unfit, it then determines whether the best interest of the children requires that parental rights be terminated. *In re D.T.*, 212 Ill. 2d 347, 352 (2004). At the best interest stage of termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the children's best interest. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71. In reaching a best interest determination, the trial court must consider, for each child and within the context of that child's age and developmental needs, the following factors, which are derived from section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)):

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to

care for the child." (Internal quotation marks omitted.) *In re J.B.*, 2019 IL App (4th) 190537, ¶ 32.

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. Additionally, a trial court "may consider the nature and length of the child's relationship with his present caretaker and the effect that a change in placement would have upon his emotional and psychological well-being." *In re Jaron Z.*, 348 Ill. App. 3d 239, 262 (2004). On review, "[w]e will not disturb a court's finding that termination is in the children's best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 38    As the trial court opined, it is clear from the record the minors had "put down roots" with their foster parents. They had been in and out of foster care with these foster parents for much of their lives. The minors considered the foster parents to be their parents and referred to them as "mom" and "dad." The foster parents provided physical and emotional care for the minors and were supportive of them. They had also expressed their intent to adopt the minors. St. B. testified she considered the foster parents her parents before this case was opened. She felt cared for and safe in the foster home. She wished to remain with the foster family and be adopted, and she believed her siblings shared her sentiment. The court acknowledged that all three minors were old enough to express their wishes and that it would consider their wishes in its determination. Meanwhile, respondent had absolutely no contact with the minors for three years, and there was no evidence she was attempting to reform a relationship with her children.

¶ 39    Given the stable and loving relationship the minors had in the foster home, their express wishes to remain in the home, and respondent's complete lack of contact with them, it

would be frivolous to argue the best interest finding was against the manifest weight of the evidence.

¶ 40                                    III. CONCLUSION

¶ 41            For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 42            Affirmed.