*In re* CHEYENNE S. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Teresa R. Respondent-Appellant).

Third District   No. 3—03—0047

Opinion filed September 1, 2004.

John A. Bernardi (argued), of Pekin, for appellant.

Stewart Umholtz, State's Attorney, of Pekin (Lawrence M. Bauer (argued) and Sabrina S. Henry, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Dennis M. Sheehan, of Pekin, guardian *ad litem*.

JUSTICE SLATER delivered the opinion of the court:

The respondent-mother, Teresa R. (Teresa), appeals from the orders of the trial court finding her to be an unfit parent and subsequently terminating her parental rights to 4-year-old C.S. and ordering subsidized guardianship for 15-year-old A.V. For the following reasons, we find that the State's evidence failed to establish that Teresa was an unfit parent as a matter of law. Therefore, we reverse the trial court's orders: (1) finding Teresa to be an unfit parent; (2) terminating her parental rights to C.S.; and (3) ordering subsidized guardianship for A.V.

## I. FACTS

Two of Teresa's children are the subject of this appeal. Andrew V. (A.V.) was born on June 2, 1987. Cheyenne S. (C.S.) was born on May 12, 1998. In January of 1998, Teresa picked up A.V. after a weekend visit from his father's home and observed marks and bruises on him. A.V. told Teresa that his father, Andrew S. (Andrew), had caused the bruises. Teresa then called the Department of Children and Family Services' (DCFS) hotline. At that time, Teresa was five months pregnant with C.S. C.S.'s biological father is James S. (James).

### A. The First Neglect Petition

On March 30, 1998, the State filed a petition alleging that A.V. was both abused and neglected.[1] Counts I, II, and III of the petition alleged that Andrew abused and neglected A.V. See 705 ILCS 405/2—3(2)(ii), (1)(b), (1)(a) (West 1998). Count IV of the petition alleged that Teresa neglected A.V. because she did not provide proper care or support for him. See 705 ILCS 405/2—3(1)(a) (West 1998).

### B. Adjudication Order on the First Petition

On August 7, 1998, the court entered an adjudication order stating that A.V.'s father did not appear in court and was therefore found guilty of counts I, II, and III in the State's petition by default. The order noted that Teresa admitted the counts directed against A.V.'s father. However, Theresa did not admit the allegations in count IV directed against her and the court made no finding on that count. Finally, the court found A.V. to be abused and neglected and set a date for a dispositional hearing.

### C. Dispositional Hearing and Order on the First Petition

The dispositional hearing was held on October 23, 1998. At that

---

[1]At that time, Teresa was still pregnant with C.S. Therefore, C.S. was not named in the State's petition.

time, Teresa had given birth to C.S. and was married to C.S.'s father, James. However, neither C.S. nor James was made a party to these proceedings.

DCFS prepared a dispositional report for the court. In the report, it referred to James' prior involvement with DCFS for alleged sexual exploitation, sexual molestation, burns by neglect, medical neglect, and lack of supervision. DCFS gave no details concerning these prior involvements. Instead, it noted that James had denied the allegations and taken a polygraph test that had proved to be inconclusive. It also noted that no criminal charges had been filed against James.

The trial court's dispositional order made A.V. a ward of the court with guardianship and custody of A.V. remaining with Teresa. In addition, although Teresa was never found to have neglected or abused A.V., she was ordered by the court to get a psychological evaluation, complete counseling, allow unannounced visits at her home by DCFS, allow A.V. to have no contact with James and obtain an order of protection prohibiting contact "between minors and [James] with help of DCFS."[2]

### D. The Second Neglect Petition

On December 4, 1998, the State filed a second petition alleging neglect. This petition was directed toward Teresa and James and involved both A.V. and C.S. In the petition the State alleged a single count of neglect based upon an injurious environment. See 705 ILCS 405/2—3(1)(b) (West 1998). Specifically, the State alleged that on December 1, 1998, Teresa allowed contact between C.S. and James in violation of the order of protection filed on November 13, 1998. As a result of this incident, DCFS removed the children and placed them in temporary foster care.

On June 17, 1999, the State filed an amended neglect petition. Count I repeated the allegation in the earlier petition that Teresa neglected A.V. and C.S. when she allowed contact between C.S. and James in violation of the order of protection. Count II alleged that Teresa neglected A.V. and C.S. based upon her long-standing substance abuse problems. Count III alleged that the children were neglected based on Teresa's failure to protect herself from numerous abusive relationships with men.

On July 1, 1999, the trial court held a hearing on the State's amended neglect petition. At the hearing, the State moved to dismiss

---

[2]For purposes of this appeal, we will assume the trial court's reference to "minors" included C.S. even though she was not yet made a party to these proceedings.

a portion of the allegations in count II. The trial court then dismissed counts II and III in their entirety for lack of proof.

Following dismissal of counts II and III, the trial court proceeded to hear evidence with respect to count I. Teresa testified that she had C.S. in her vehicle with her when she picked up her husband, James, at the airport on December 1, 1998. Teresa said she was driving him to her mother's home, where James was then living.

Teresa testified that prior to obtaining the order of protection she met with two DCFS representatives, Tom Ivey and Jean Tifft, who asked her to sign a paper agreeing that she would only allow supervised visitation between her husband and the children. Teresa said she was told that the supervisor had to be a person over the age of 18. However, Teresa was never told that she could not be the supervising adult. Since the order of protection stated that visitation between James and C.S. had to be supervised by DCFS, and DCFS representatives had told her that the visitation with C.S. was authorized if the supervisor was over the age of 18, Teresa believed that the order of protection was not violated if James saw C.S. in the presence of another adult over the age of 18.

Teresa said that she did not want the order of protection which was then in place against her husband. She only obtained the order because she was ordered to do so. She abided by the terms of the order and never allowed contact between A.V. and James, and believed that supervised visits with C.S., as approved by DCFS, were still permitted.

On July 6, 1999, the trial court filed an order finding count I of the petition against Teresa proved. The trial court found no need for a further dispositional hearing and reaffirmed the previous dispositional order of October 23, 1998. The trial court then returned A.V. and C.S. to Teresa's custody and she retained guardianship of them.

On July 19, 1999, the trial court entered an order making C.S. a ward of the court for the first time. Teresa was granted guardianship and custody of A.V. and C.S.

## E. Permanency Review Hearings

This case then proceeded through various stages of permanency reviews. The first reviews resulted in favorable reports of the children's relationship with Teresa and their individual progress. However, the reviews eventually resulted in increasingly negative reports of Teresa's lack of cooperation with DCFS. At a February 8, 2001, permanency review, DCFS requested and received an order transferring guardianship from Teresa to DCFS. However, Teresa continued to have custody of the children.

On September 3, 2001, DCFS received a report that James was

again living with Teresa and the children. Three days later, DCFS removed both children from Teresa's custody.

## F. The Termination Petition

On September 6, 2001, the State filed a petition alleging that Teresa and both the children's fathers were unfit. In the petition the State requested that Teresa's and the fathers' parental rights be terminated to A.V. and C.S.

In count I of the petition the State alleged that Teresa was an unfit person because she had failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children from her care within nine months after the adjudication of neglect. See 750 ILCS 50/1(D)(m) (West 2000). Count II of the petition alleged that Teresa was an unfit person for failure to make reasonable progress toward the return of the minors to her care within nine months after the adjudication of neglect. See 750 ILCS 50/1(D)(m) (West 2000). The remaining counts in the petition were directed toward the children's biological fathers.

The allegations in the petition do not state whether the State is referring to the first adjudication of neglect, the second, or both.

## G. The Fitness Hearing

On June 14, 2002, the fitness hearing began. DCFS caseworker Jean Tifft testified about the various ways that Teresa failed to comply with the DCFS' service plans. Her testimony was supported by two other witnesses who testified about Teresa's missed appointments for counseling.

At the conclusion of the evidence the trial court ruled that the State had proven that Teresa had failed to make reasonable efforts or reasonable progress to correct the conditions that were the basis for the removal of the children within nine months after their adjudication of neglect. See 750 ILCS 50/1(D)(m) (West 2000).

## H. The Best Interest Hearing

The best interest hearing began on October 10, 2002. DCFS submitted a report for the trial court. In the report, DCFS summarized the children's foster placements and stated that C.S.'s foster care family was committed to adopting her. The report also noted Teresa's strong bond with her children and that she had been observed to be loving, caring and affectionate. However, DCFS concluded that Teresa failed to address her problems and recommended that her parental rights be terminated

Karen Green, a visitation facilitator, testified that C.S. said she loved her foster father but not her foster mother. C.S. told Green that

she wanted to live with her mother. Green believed that C.S. would be better off with her foster parents. However, Green acknowledged that she had not spent any time in the foster home and knew nothing about its cleanliness or safety.

Teresa testified that she tried to show both children attention during her visits and that she spoke with A.V. on the telephone at least three times per week. Teresa said she wanted both children to return home to her.

After taking the matter under advisement, the trial court terminated Teresa's parental rights to C.S. and it ordered subsidized guardianship for A.V.

## II. ANALYSIS

On appeal, Teresa first argues that the State's evidence failed to establish a *prima facie* case of her unfitness as a matter of law. In the alternative, she contends that the State failed to prove by clear and convincing evidence that she was an unfit parent.

Teresa raises numerous points of error on the part of the State which she claims caused her to be unconstitutionally denied her parental rights. Specifically, she claims: (1) the finding of unfitness based on her failure to make reasonable progress or efforts toward the return of her children was improper because she retained both custody and guardianship of her children during the applicable nine-month statutory period (see 750 ILCS 50/1(D)(m) (West 2000)); (2) it cannot be determined from the State's petition to terminate her parental rights whether the State was proceeding on the first or the second adjudication of neglect; (3) after a hearing on the first neglect petition the trial court only found that A.V.'s father, Andrew, not Teresa, neglected and abused A.V.; (4) C.S. was not the subject of the first neglect petition; (5) although the second adjudication of neglect was directed toward Teresa and the trial court found that she had neglected A.V. and C.S., the nine-month review period did not run because the trial court never held a dispositional hearing; and (6) the unfulfilled conditions that were the basis for the State's petition to terminate her parental rights were completely unrelated to the removal of her children.

A natural parent's right to raise her child is a basic fundamental liberty interest and, thus, a proceeding to involuntarily terminate a parent's rights is a drastic measure. *In re D.C.*, 209 Ill. 2d 287, 807 N.E.2d 472 (2004). A trial court's authority to involuntarily terminate parental rights and to appoint a guardian with the right to consent to adoption is statutorily derived, and the scope of the court's authority is defined by the language of the Juvenile Court Act of 1987 (Juvenile

Court Act) (705 ILCS 405/1—1 *et seq.* (West 2000)) and the Illinois Adoption Act (Adoption Act) (750 ILCS 50/0.01 *et seq.* (West 2000)).

Pursuant to sections 2—13 and 2—29 of the Juvenile Court Act, termination proceedings may be initiated by the filing of a petition brought "in the interest of" and on behalf of an abused, neglected or dependent minor at any time after a dispositional order has been entered pursuant to section 2—22 of the Juvenile Court Act. 705 ILCS 405/2—13, 2—29, 2—22 (West 2000).

When a termination petition has been filed, the trial court must first decide whether any of the statutory grounds for unfitness alleged in the petition have been proven by clear and convincing evidence. *In re D.C.,* 209 Ill. 2d 287, 807 N.E.2d 472 (2004). If the court finds that at least one of the several discrete grounds for finding a person "unfit," as set forth in section 1(D) of the Adoption Act, has been proven by clear and convincing evidence, the court may then consider whether termination of parental rights is in the best interest of the child. *In re D.C.,* 209 Ill. 2d at 296, 807 N.E.2d at 476-77.

We will first address Teresa's argument that she could not have been found unfit for failure to make reasonable progress or reasonable efforts toward the return of her children within nine months of their adjudication of neglect because she did not relinquish custody or guardianship of them during that time period. See 750 ILCS 50/1(D)(m) (West 2000).

■ Section 1(D)(m) of the Adoption Act contains three distinct grounds for finding a parent unfit. See 750 ILCS 50/1(D)(m) (West 2000). The three possible grounds are the failure: (1) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent; or (2) to make reasonable progress toward the return of the child to the parent within nine months after an adjudication of the child as abused, neglected or dependent; or (3) to make reasonable progress toward the return of the child during any nine-month period after the end of the initial nine-month period following the adjudication of the child as abused, neglected, or dependent. 750 ILCS 50/1(D)(m) (West 2000).

■ We are not persuaded by Teresa's argument that the trial court's finding of unfitness based on her failure to make reasonable progress or efforts toward the return of her children was improper because she retained both custody and guardianship of her children during the applicable nine-month statutory period. See 750 ILCS 50/1(D)(m) (West 2000). The Adoption Act does not require that the parent lose guardianship or custody of her children for the statutory period to begin to run. See 750 ILCS 50/1(D)(m) (West 2000). Instead, the statutory nine-month period begins to run when the trial court

adjudicates the children abused, neglected or dependent. *In re D.F.*, 208 Ill. 2d 223, 802 N.E.2d 800 (2003).

Since the nine-month statutory period begins to run after the date of adjudication, we also reject Teresa's contention that the nine-month statutory period did not begin to run after the second adjudication of neglect because no dispositional hearing was held.

■ A review of Teresa's remaining claims of error, however, indicates that the State's evidence failed to establish that she was an unfit parent as a matter of law. As Teresa claims, many errors below caused her to be unconstitutionally denied of her parental rights to A.V. and C.S.

First, the State did not make it clear in its petition to terminate Teresa's parental rights whether it was basing its termination petition on the first or the second adjudication of neglect. After a careful review of the record, we find that, as a matter of law, both adjudications were inadequate to serve as a basis for the State's termination petition against Teresa.

The first adjudication of neglect could not be the proper basis for the termination petition because the trial court's findings of abuse and neglect on the first petition were only directed toward A.V.'s father, Andrew, and not Teresa. The Juvenile Court Act authorizes the State to file a termination petition after a minor has been found by the court to be abused or neglected and the court has entered a dispositional order. 705 ILCS 405/2—13, 2—29 (West 2000). Although the parties have cited no case law on point, common sense dictates, however, that the State cannot file a termination petition alleging that a parent is unfit before the parent that is the subject of the termination petition has been found to have abused or neglected the child in question.

Likewise, the second adjudication of neglect was not a proper basis for the State's termination petition. After a hearing on the second petition, the trial court found that Teresa had neglected the children when she picked up James at the airport with C.S. in her vehicle. That trip to the airport violated the terms of the order of protection that Teresa had filed against James in November of 1998. However, Teresa only filed the order of protection because she had been ordered to do so after the trial court found that Andrew abused and neglected A.V.

Without a finding that Teresa had neglected A.V., however, the trial court had no authority to order Teresa to file such an order. Therefore, the violation of that order could not, as a matter of law, be the basis for the finding that Teresa neglected her children.

Since neither adjudication of neglect could serve as a proper basis for the termination petition, we find that the State's evidence failed to

prove that Teresa was an unfit parent as a matter of law. The fact that Teresa may have failed to comply with DCFS' service plans is irrelevant since she should not have been subject to such plans in the first place.

## III. CONCLUSION

We find that the trial court erred in finding that Teresa was an unfit parent to A.V. and C.S. Therefore, we reverse the trial court's order of unfitness as well as its orders terminating Teresa's parental rights to C.S. and ordering subsidized guardianship for A.V.

The judgment of the circuit court of Tazewell County is reversed.

Reversed.

BARRY, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, specially concurring:

I concur in the result of Justice Slater's opinion and agree with most of his analysis. My only point of disagreement stems from the first claim addressed in the analysis section. Justice Slater observes that "[t]he Adoption Act does not require that the parent lose guardianship or custody of her children for the statutory period to begin to run." 351 Ill. App. 3d at 1049. Although this statement is technically correct, the tolling of the statutory period is only relevant if the statute itself applies to the allegedly unfit parent. By its plain language, the statute only applies when there has been a "removal of the child from the parent" (reasonable efforts), and a failure to sufficiently work toward "the return of the child to the parent" (reasonable progress). 750 ILCS 50/1(D)(m) (West 2000). These provisions are inapposite under the instant facts because, during the relevant period, Teresa had both custody and guardianship of the minors. There simply was no prospect of "returning" the minors to her because the minors were never "removed" in the first place.

Thus, I would reverse on this basis as well.