2023 IL App (2d) 23055-U
No. 2-23-0055
Order filed July 6, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* S.S., a Minor. | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| | ) | |
| | ) | |
| | ) | Nos. 20-JA-74 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee v. Brandon S., | ) | Jeffrey L. Hirsch, |
| Respondent-Appellant) | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly found respondent unfit and that it was in the minor's best interests to terminate respondent's parental rights.

¶ 2    Respondent, Brandon S., appeals from the trial court's orders finding him unfit and terminating his parental rights over the minor S.S, respondent's daughter. Brandon contends that the unfitness and termination findings were against the manifest weight of the evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The facts of this case may be stated briefly and without controversy (in contrast to Brandon's presentation in his brief). The minor, S.S. was born in Nevada in February 2020. S.S.'s

mother, H.B., signed a specific consent for adoption by a relative. H.B.'s rights are not at issue in this appeal.

¶ 5    In June 2020, there was a domestic incident between Brandon and H.B., in Hebron, which occurred while three-month-old S.S. was present. At the time, Brandon, H.B., and S.S. were all homeless and had no long-term housing arrangements. During the altercation, Brandon broke H.B.'s phone and pushed her, then he took S.S. and fled with the child in a vehicle. He was later stopped by the authorities and arrested. Afterwards, Brandon called and texted H.B. saying he knew where the minor would be staying, that he would "beat the bloody pulp" out of her, and "mop the floor with her blood." In addition, it was discovered that there was an open abuse and neglect case involving Brandon, H.B., and S.S, in Nevada. The circuit court issued an emergency no-contact order enjoining Brandon from contacting either H.B. or S.S. Meanwhile, the State filed a neglect petition, alleging that S.S.'s environment was injurious to her welfare. 705 ILCS 405/2-3(1)(b) (West 2020). Protective custody was taken of S.S. and the case was managed by a contract agency, Youth Services Bureau (YSB).

¶ 6    Subsequently, Brandon was arrested in July 2020 for threatening the initial foster parent and the DCFS caseworker, which resulted in felony charges (20-CF-533). As will become relevant later, the public defender was appointed to represent Brandon.

¶ 7    In August 2020, Brandon participated in an integrated assessment. During the intake portion, Brandon stated that he was "registered as a lethal weapon" and reported that he had been psychiatrically hospitalized over 500 times as an adolescent. Brandon made some additional statements indicating that he knew the location of S.S.'s foster home and was in contact with another child in that same foster home. This turned out to be false and the child Brandon described never resided in the same foster home. Brandon also stated that he told the court to change S.S.'s

foster home, and that the court then ordered it, and the child was moved from a relative to a non-relative foster placement. Although a transfer did occur, it was not at all at Brandon's direction; in fact, it occurred in part as a result of safety concerns for the child and foster parents due to Brandon's threats. As a result of Brandon's statements, and the fact that Brandon had previously attempted to take S.S., heightened security protocols were implemented, particularly with respect to any future court-ordered visitation.

¶ 8     The integrated assessment also recommended that Brandon: obtain suitable housing and employment; remain drug and alcohol free (including cannabis); receive a psychological and psychiatric assessment, if the latter was necessary; receive a medication management assessment; participate in mental health services. Brandon was also recommended to participate in parenting education and domestic violence services, but that could only be accomplished after treatment through mental health services. These recommendations became Brandon's service plan and were prerequisites to restoring S.S. to his custody.

¶ 9     After paternity was established in October 2020, the court ordered supervised visitation. Only one scheduled visit took place. Three other visits were tried but unsuccessful, and the court suspended visitation indefinitely.

¶ 10     In February 2021 H.B. stipulated to the allegations in the State's neglect petition and S.S. was adjudicated neglected and made a ward of the court. The court then heard evidence that Brandon had not undertook, much less completed, any recommended evaluations or services. In particular, the court was informed that Brandon was only willing to be assessed by a physician who agreed to prescribe him cannabis. In addition, Brandon was arrested again for threatening his public defender in the prior threats case (20-CF-533, added charge). The court found that Brandon was unwilling or unable to care for the minor, and that he was dispositionally unfit.

¶ 11  Brandon completed a psychological assessment in June 2021, which found he suffers from intense delusion and hallucinations, and presents with disorganized speech and thought patterns. The evaluator diagnosed Brandon with schizoaffective disorder, bipolar type, and recommended inpatient psychiatric treatment and an additional psychiatric assessment. Laura McCoy, the YSB caseworker, sent Brandon the results of the psychological assessment. Brandon was displeased and sent a series of text messages to McCoy and the foster father in which Brandon berated McCoy, denigrated the court, and stated that he knew where S.S. was staying and could take her. Brandon sent an additional threat to S.S.'s foster father, which resulted in criminal charges and Brandon's arrest. A permanency hearing was held five days later, and the court found that Brandon had not made reasonable efforts or progress. The court also ordered that Brandon undergo a psychiatric evaluation.

¶ 12  In August 2021 Brandon was arrested for felony criminal damage to government property (21-CF-691). In November, Brandon pled guilty and was sentenced to time served and probation. The day after his release, H.B. sought and received an order of protection for her and S.S. Three days after that, Brandon was charged with a violation of the order (21-CM-1059). At a permanency hearing in February 2022, the court again found that Brandon had not made reasonable efforts or progress.

¶ 13  Brandon received a psychiatric assessment and was referred for individual counseling in April 2023. At the permanency hearing in July 2022, H.B. signed a specific consent for adoption and the court found that Brandon still had not made reasonable efforts or progress. On the State's motion, the court changed S.S.'s permanency goal to substitute care. The State then filed a petition to terminate Brandon's parental rights, which alleged he was unfit because he (1) failed to maintain a reasonable degree of interest, concern, or responsibility for S.S.'s welfare (750 ILCS 50/1(D)(b)

(West 2020)); (2) failed to make reasonable efforts to correct the conditions that were the basis for removal during specified nine-month periods (*id.* § 1(D)(m)(i)); and (3) failed to make reasonable progress towards S.S.'s return to his care during specified nine-month periods (*id.* § 1(D)(m)(ii)). In particular, the State's unfitness petition noted Brandon's failure to attend 12 court dates after his arraignment on the neglect petition.

¶ 14    At the unfitness hearing in October 2022, caseworker McCoy testified regarding Brandon's service plan, and his failure to complete services. McCoy noted that Brandon's admitted cannabis usage largely disqualified him from drug testing, that he had no consistent address, and that he attended only a single counseling session after his psychiatric assessment. McCoy stated that Brandon had made negligible progress, that he was not consistently taking prescribed psychiatric medication, and that he either could not or would not complete services due to his disorders. The only services Brandon completed were paternity testing and his initial assessments. Brandon testified that he attempted to make it to his various appointments and comply with the service plan but was frustrated by his occasional incarceration and treatment providers' lack of flexibility regarding initial scheduling and rescheduling for appointments he missed. Brandon also stated that he had been seeing "a therapist" remotely but he could not recall the provider's name or dates on which he attended sessions. The trial court issued an 11-page memorandum decision finding Brandon unfit under counts I and III of the petition.

¶ 15    Brandon did not appear at the best-interests hearing. The court, upon learning that Brandon was in Tennessee and wished to appear remotely, attempted to accommodate this request; but after waiting 35 minutes for Brandon to connect to the session without success, the court proceeded without him. McCoy testified that S.S. was strongly bonded with her foster parents, who provided S.S. with a loving home for the preceding 2½ years. By contrast, S.S. had virtually no relationship

with Brandon since her infancy and often months would go by without Brandon making contact with the agency or inquiring about S.S. Both foster parents testified regarding S.S.'s daily routine, activities, and participation in events with her extended foster family. When S.S. first arrived in her new home, physical therapy was needed to compensate for deficits in her motor skills, and she had made considerable progress. Both foster parents were committed to S.S.'s adoption and her long-term permanency. The hearing concluded without Brandon having joined remotely.

¶ 16　At the conclusion of the hearing, the court found that it was in S.S.'s best interests to terminate Brandon's parental rights and entered a written order. The court appointed appellate counsel to represent Brandon and this appeal followed.

¶ 17　　　　　　　　　　　　　　　II. ANALYSIS

¶ 18　On appeal, Brandon contends that the trial court's unfitness and best-interests findings were contrary to the manifest weight of the evidence. The State, on the other hand, contends that the evidence was more than sufficient. We agree with the State.

¶ 19　At any time after the entry of the dispositional order, the State may file a petition requesting termination of parental rights. 705 ILCS 405/2-13(4) (West 2022); *In re Brandon A.*, 395 Ill. App. 3d 224, 234, 334 (2009). Thereafter, the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) provides for the termination of parental rights in a two-step process. "First, there must be a showing, based on clear and convincing evidence, that the parent is 'unfit,' as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 1998))." *In re C.W.*, 199 Ill. 2d 198, 210 (2002). After finding the parent unfit, the court next considers whether it is in the best interests of the child to terminate parental rights. *Id.* We will reverse an unfitness or best-interests finding only if the trial court's determination was against the manifest weight of the evidence. *In re Nevaeh R.*, 2017 IL App (2d) 170229, ¶ 17. A decision is against the manifest

weight of the evidence where the opposite result was clearly apparent. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006).

¶ 20    We first address unfitness. Section 1(D) of the Adoption Act provides various grounds under which a parent may be found unfit. We focus our attention on count I—that Brandon failed to demonstrate a reasonable degree of interest, concern, or responsibility for S.S.'s welfare—as any one count, properly proven, is sufficient to sustain a finding of parental unfitness. See *In re D.C.*, 209 Ill. 2d 287, 296 (2004). Because the language used in this ground for unfitness is in the disjunctive, "any one of the three individual elements, *i.e.*, interest *or* concern *or* responsibility, may be considered by itself as a basis for unfitness." *In re B'Yata I.*, 2013 IL App 2d 130558, ¶ 31 (emphasis in original). When determining whether a parent has shown a reasonable degree of interest, concern, or responsibility for a minor's welfare, a court considers "the parent's efforts to visit and maintain contact with the child as well as other indicia, such as inquiries into the child's welfare. *Id.* Courts may also consider whether a parent completed necessary service plans in making such a determination. *Id.* A parent's interest, concern, or responsibility "must be objectively reasonable," and courts must focus on the parent's efforts that show interest in the child's wellbeing, and not on his or her successes. *Id.*

¶ 21    Brandon largely contends that his actions were reasonable and that his progress was hindered by "government interference in his ability to comply." He asserts that he did all he could under the circumstances and attributes the result in this case to the failure of YSB caseworkers to make a "proper" psychiatric referral. We disagree.

¶ 22    Brandon's argument unduly minimizes the evidence before the trial court of his own actions and inaction. First, there was overwhelming evidence of Brandon's failure to comply with the directives of his service plan, which indicates a lack of interest, concern, or responsibility for

the minor's welfare. See *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31. The service plan outlined the necessary steps for Brandon to obtain visitation and potentially restore S.S. to his custody. The record shows that over the 2½ years this case was pending, Brandon failed to complete most of the plan. Second, the record is replete with instances showing Brandon was hostile towards S.S.'s caregivers and caseworkers, which resulted in his arrest (and later, conviction) on felony charges, and willfully defied court orders to stay away from H.B. and S.S. Eventually, Brandon proved himself to be an outright threat to the safety of others, including S.S. That is not something that caseworkers, the trial court, or this court could take lightly.

¶ 23    To the extent that Brandon faults YSB and DCFS for perceived errors in making referrals, we note that this was the basis on which the trial court found insufficient evidence of unfitness on count II. But, those errors, if any, do not diminish the evidence with respect to count I. As our supreme court has pointed out, subsection (b) "contains no state of mind requirement, nor does it carve out an exception for faultless failure." *In re M.I.*, 2016 IL 120232, ¶ 26. Circumstances such as difficulty in obtaining transportation, poverty, actions and statements of others that hinder progress or visitation, and the need to resolve other life issues are relevant, to be sure. *In re Adoption of Syck*, 138 Ill. 2d 255, 278-79 (1990). However, a parent is *not* fit merely because he or she has demonstrated *some* interest or affection toward the child. *In re Jaron Z.*, 348 Ill App. 3d 239, 259 (2004). Again, the degree of interest, concern, and responsibility must be *objectively reasonable*. *In re Daphnie E.*, 368 Ill. App. 3d at 1064.

¶ 24    Throughout the pendency of this case, Brandon's behavior revealed a preoccupation with himself and his grievances, rather than S.S.'s welfare. When, as here, "personal visits with the child are somehow impractical, letters, telephone calls, and gifts to the child or those caring for the child may demonstrate a reasonable degree of concern, interest and responsibility, depending

upon the content, tone, and frequency of those contacts under the circumstances." (Citation and internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 26; see also *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31 (citing *In re Adoption of Syck*, 138 Ill. 2d at 279). The record is devoid of any evidence of letters, gifts, or even inquiries by Brandon regarding S.S.'s wellbeing. Brandon refused to release medical or psychiatric records to the agencies, which he claimed he had, yet never provided. Rather, the record is replete with instances of missed critical appointments and court dates, all of which showed that Brandon was either unable or simply unwilling to take responsibility for his behavior, outlook, or psychiatric condition. Brandon was not even minimally compliant with medication therapy, misrepresented the statements of clinicians and the court, and asserted that he "kn[e]w" best, despite ample evidence to the contrary. Some of his conduct may be explained as symptoms of his largely untreated psychiatric condition; but that does not excuse his failure to make any meaningful progress towards, or inquiry into, S.S.'s wellbeing. As the trial court noted:

> "Brandon came up with tenuous excuses time after time[,] showing indifference rather than demonstrating an interest, concern[,] or responsibility for the welfare of the child by taking reasonable, doable steps for his services and attending court to review his efforts and progress. Whatever else being a fit parent may entail, showing up and earnestly trying to follow through with services are undoubtedly the least ounce of that measure."

We agree. The evidence in this case admits only the conclusion that Brandon was unfit under subsection (b), his efforts were *not* objectively reasonable, and the trial court's unfitness finding was consistent with the evidence.

¶ 25   The same holds true for the court's best-interests finding as well. At this phase, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a

stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). Section 1-3(4.05) of the Adoption Act (705 ILCS 405/1-3(4.05) (West 2022)) sets forth various factors for the trial court to consider in assessing a child's best interests. In addition, at this phase, "the full range of the parent's conduct can be considered." *In re C.W.*, 199 Ill. 2d at 217. The State bears the burden of proving by a preponderance of the evidence that termination is in the best interests of the minor, which again is subject to the highly deferential manifest-weight standard. See *In re D.T.*, 212 Ill. 2d at 366.

¶ 26    We conclude that Brandon has not established that the trial court's best-interests finding was against the manifest weight of the evidence. The trial court reasonably concluded that the stability and permanency of S.S.'s adoption was preferable to a continued guardianship. At the time of the best-interests hearing, S.S. was three years old, and had resided in the same foster home for most of her life. The evidence showed that she was strongly bonded to her foster parents, and had a loving, stable home. Brandon, conversely, suffers from a serious psychiatric condition, had been non-compliant with therapy, and represented that he was potentially dangerous to caseworkers and foster parents when he does not get his way. Additionally, Brandon did not have a consistent residence and at no time was in a position to have S.S. restored to his custody. As such, we conclude that the trial court's finding that it was in S.S.'s best interests to terminate Brandon's parental rights was not against the manifest weight of the evidence.

¶ 27    Before concluding, we note that the State raised several concerns regarding Brandon's appellate brief and its failure to conform to supreme court rules. The State is correct, in that the argument section contains scant citations to authority (mostly boilerplate) and no citations to the record (*cf.* Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)). In addition, Brandon's entire argument section appears to have been dictated, or at least styled, like a closing argument, and its flippant, fact-free assertions are *not* well taken. Things did not improve with his three-page reply brief

2023 IL App (2d) 230055-U

either. Although our local rules allow less-technical memoranda in lieu of briefs, counsel for Brandon filed briefs, not memos; but in either case we are "entitled to have the issues clearly defined with pertinent authority cited ***." *In re M.M.*, 2016 IL 119932, ¶ 30. While these failures were not so grave as to hinder our review, we caution Brandon's appellate counsel that compliance with supreme court rules is non-optional, and trust that we should not have occasion to repeat this admonishment in the future.

¶ 28                                    III. CONCLUSION

¶ 29    After carefully examining the record, we agree with the trial court that Brandon was unfit and that it was in S.S.'s best interests to terminate his parental rights. We, therefore, affirm the judgment of the circuit court of McHenry County.

¶ 30    Affirmed.