NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231507-U

NO. 4-23-1507

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 9, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.S.-M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
|     Petitioner-Appellee, | ) | No. 21JA61 |
|     v. | ) | |
| Phillip M., | ) | Honorable |
|     Respondent-Appellant). | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

_____

JUSTICE DOHERTY delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1   *Held:* The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment where no meritorious issues could be raised on appeal that the court's fitness and best interest findings were against the manifest weight of the evidence.

¶ 2   In May 2023, the State filed a petition to terminate the parental rights of respondent Phillip M. to his minor child, K.S.-M. (born in 2021). In December 2023, the trial court found respondent was an unfit parent under the Adoption Act (750 ILCS 50/1 *et seq.* (West 2022)) and that termination of respondent's parental rights was in K.S.-M.'s best interest.

¶ 3   Respondent appealed. Thereafter, respondent's appointed counsel moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing respondent's appeal presents no potentially meritorious issues for review. We grant the motion and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5         Respondent and Destiney S. are the biological parents of K.S.-M. Both parents were parties to the proceedings below. Destiney S. has not appealed the termination of her parental rights. Accordingly, this disposition is limited to addressing respondent's potential claims on appeal.

¶ 6              A. The State's Petition for Adjudication of Wardship

¶ 7         In July 2021, the State filed a petition for adjudication of wardship. The State alleged K.S.-M. was an abused or neglected minor (705 ILCS 405/2-3(1) (West 2022)). Specifically, Destiney S. had tested positive for methamphetamine twice during her pregnancy with K.S.-M., had left residential substance abuse treatment, and had "limited" contact with an outpatient substance abuse treatment program. Further, another child of Destiney S. was in shelter care.

¶ 8         Respondent filed an appearance. In January 2022, the trial court found that, based on Destiney S. having an older child in care and her "lack of progress," K.S.-M. was in an environment injurious to his welfare (*id.* § 2-3(1)(b)). Further, it was Destiney S.'s neglect that was at issue.

¶ 9         In February 2022, the trial court entered a dispositional order adjudicating K.S.-M. neglected and making him a ward of the court. It found both respondent and Destiney S. unfit to care for K.S.-M. for reasons other than financial circumstances alone.

¶ 10              B. The State's Termination Petition

¶ 11         In May 2023, the State filed a petition to terminate respondent's parental rights. As amended in October 2023, the petition alleged respondent was an unfit parent within the meaning of the Adoption Act due to his failure (1) to make reasonable progress toward the return of K.S.-M.

during the nine-month periods of February 11, 2022, to November 11, 2022, and November 12, 2022, to August 12, 2023; (2) to make reasonable efforts to correct the conditions that were the basis for the removal of K.S.-M. during the same two nine-month periods; and (3) to maintain a reasonable degree of interest, concern, or responsibility as to K.S.-M.'s welfare. See 750 ILCS 50/1(D)(b), (m)(i), (ii) (West 2022). The State made no allegations against Destiney S., as she had agreed to surrender K.S.-M. for adoption.

¶ 12          C. The Fitness Portion of the Termination Proceedings

¶ 13          Respondent, who was represented by appointed counsel, appeared at the hearing on the termination petition. Only the State presented evidence.

¶ 14                              1. *Kim Tonozzi*

¶ 15          Kim Tonozzi, a child welfare specialist supervisor with Chaddock Foster and Adoption Services (Chaddock), testified that she had been the case supervisor since its opening. Her involvement with the case started when K.S.-M. was born. Destiney S. had an open case at the Illinois Department of Children and Family Services (DCFS), had not made progress in that case, and had tested positive for methamphetamine and tetrahydrocannabinol while she was pregnant with K.S.-M. No father was listed on K.S.-M.'s birth certificate, though she reported respondent was the biological father.

¶ 16          Tonozzi authenticated a copy of the family services plan dated April 7, 2022, that she had approved for the case. The trial court admitted it as covering a portion of the first nine-month period. Tonozzi testified that the plan referred respondent to parenting classes and other services, including services relating to substance abuse. The parenting class provider was unable to reach respondent by mail or telephone. He was rated "unsatisfactory" on parenting classes and other services.

¶ 17        Tonozzi testified, over the entire period the case was open, respondent had telephoned Chaddock four times. He had participated in child and family team meetings twice. Respondent indicated he did not want to participate in services. He asked about K.S.-M. during the meetings. He did not attempt to have his visitation privileges reinstated when they were suspended in July 2021 after the temporary custody hearing, and he never sent letters, cards, or gifts. Respondent was given information about how to provide a required DNA sample, but he did not initially respond or comply with this requirement. Approximately a year after being requested to provide the DNA sample, he finally did so.

¶ 18        At the end of Tonozzi's testimony, the State asked the trial court to admit three exhibits. Respondent objected to "the service plan" based on "hearsay and foundation." Tonozzi then testified the plans were made in the ordinary course of business and were an accurate account of both parents' progress. Further, the records contained in the service plan were made at about the same time as the service plan. The court accepted this testimony as adequate foundation for the exhibits' admission.

¶ 19                    2. *Jennifer Spohr*

¶ 20        Jennifer Spohr testified she had been a child welfare specialist at Chaddock since August 2022, was assigned to the case in October 2022, and had created service plans for this case. She recognized the State's exhibit Nos. 4 and 5. Exhibit No. 4 was the service plan that covered the six-month period before October 24, 2022. Exhibit No. 5 covered the period from the end of the previous plan until January 24, 2023. Both were made in the ordinary course of business and "on or about the time" covered by the plans. Respondent did not complete any "goals," and Spohr had no contact with him. She was unaware of any cards, letters, or gifts sent by respondent to K.S.-M. The only time respondent ever inquired about K.S.-M.'s well-being was at a child and

family team meeting in November 2022; respondent was told at that meeting that the DNA testing established his paternity.

¶ 21　　　　In February 2023, respondent completed one goal; he provided a DNA sample for paternity testing. After receiving the test results, respondent continued to show no interest in completing services. However, he requested that K.S.-M. be removed from the placement (in which he had been since birth) and be placed with respondent's relative.

¶ 22　　　　Over the objection of respondent's counsel, the trial court admitted the service plans that Spohr testified she created. During argument, respondent's counsel objected to "judicial notice of the rest of the court file."

¶ 23　　　　　　　　　3. *The Trial Court's Finding of Unfitness*

¶ 24　　　　The trial court deemed respondent unfit. It noted respondent's visitation was suspended at the shelter care hearing and that respondent never sought to have it reestablished. It found that respondent never engaged in any services and showed he did not want to engage in any services. Further, respondent had little contact with any caseworkers. The court concluded that respondent "was never really interested in the minor at any time during the relevant time periods" and that the evidence was sufficient to meet the State's burden of proof on all three allegations of unfitness.

¶ 25　　　　D. The Best Interest Portion of the Termination Proceedings

¶ 26　　　　　　　　　1. *Evidence*

¶ 27　　　　The State recalled Spohr to testify at the best interest portion of the termination proceeding. She said K.S.-M. was two and a half years old at the time of hearing. He had been in his placement since his foster mother took him home from the hospital after his birth in July 2021. Spohr or other Chaddock workers had visited him in his placement once a month. K.S.-M. was

bonded to his foster mother and thought of her as his mother. He appeared to be happy. His foster mother's discipline was "healthy and age appropriate." K.S.-M.'s foster mother had committed to adopting him. She had enrolled him in preschool and had ensured he had proper medical care.

¶ 28    2. *The Trial Court's Best Interest Ruling*

¶ 29    The trial court found adoption by K.S.-M.'s foster mother to be in his best interest, stating:

> "Minor has been in the same foster placement since he was born approximately two years ago. It has been the only home the minor has ever known. The minor appears to be bonded to the foster parent. All of his needs are being met there. The home appears to be safe and appropriate for the minor. There are no special needs of the minor as defined by the statute. It is a preadoptive placement due to the commitments made by the foster parent.
>
> There has not been any evidence presented to show what relationship, if any, currently exist[s] between the minor and either of the natural parents. Also, there's been no evidence presented as to when, if ever, it could be possible to consider placing the minor back into the custody of either of the natural parents. It does appear that the best opportunity for this minor to achieve permanency as required by the Juvenile Court Act [of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2022))] would be through the plan that's currently in place to have the minor be adopted by the current foster parent."

The court terminated the parental rights of respondent and advised him of his appeal rights.

¶ 30    This appeal followed.

¶ 31    II. ANALYSIS

- 6 -

¶ 32        Appellate counsel has now moved to withdraw pursuant to *Anders*, arguing that the appeal of this case presents no potentially meritorious issues for review. See *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000) (holding *Anders* applies to termination of parental rights cases and providing the proper procedure to be followed by appellate counsel). Counsel states she has reviewed the common law record, the exhibits, and the report of proceedings for the unfitness and best interest proceedings that took place on December 7, 2023, and identifies two potential issues for review: (1) whether the trial court's determination that respondent was unfit was against the manifest weight of the evidence and (2) whether the court's determination that termination of respondent's parental rights was in K.S.-M.'s best interest was against the manifest weight of the evidence. Concerning the unfitness finding, counsel contends there is no meritorious argument respondent maintained a reasonable degree of interest, concern, or responsibility as to K.S.-M.'s welfare. Concerning the best interest finding, counsel argues, "Given the deferential standard of review, counsel is unable to argue that the evidence failed to show by a preponderance of the evidence that it is in the minors' best interest to terminate respondent's parental rights."

¶ 33        We note that appellate counsel argues the trial court erred, *inter alia*, in admitting hearsay portions of the State's exhibits. However, she contends that, even if we consider only the testimony of the State's witnesses, the evidence is sufficient and that it would be frivolous to contest the court's unfitness finding as to respondent's failure to maintain a reasonable degree of interest, concern, or responsibility as to K.S.-M.'s welfare or the best interest finding. For purposes of reviewing the motion to withdraw, we accept counsel's argument concerning the admissibility of the evidence and thus consider only the testimony of the State's witnesses when we address appellate counsel's arguments.

¶ 34        Respondent has responded. He asserts K.S.-M. was placed with his foster mother

through a process that involved a "conflict of interest." He states the foster mother was K.S.-M.'s delivery nurse and was a friend of the original caseworker. Further, no attempt was made to place K.S.-M. with respondent or his relatives. Next, he argues he showed his concern for K.S.-M. by seeking information and photographs from Destiney S. and by spending $1000 on clothes and shoes for K.S.-M. and "attempt[ing] to get" the items to K.S.-M. as a first birthday gift. Finally, he says Chaddock only approached him twice about DNA testing, and he was tested the second time it approached him. Respondent does not suggest he raised any of these issues with his appointed counsel below. He states he has attempted to raise these matters with appellate counsel, but she has been uncommunicative. He requests a different attorney or "full investigation to uncover all of the foul play in this case."

¶ 35    The only report of proceedings that is a part of the record on appeal is that of the bifurcated hearing on unfitness and K.S.-M.'s best interest. See *S.M.*, 314 Ill. App. 3d at 685 ("[T]o enable us to properly fulfill our responsibilities under *Anders,* counsel should include transcripts of the relevant hearings, *i.e.*, in termination of parental rights cases, the fitness and best interests hearings."). Respondent's reply implies issues that might be apparent only in reports of earlier proceedings. For instance, respondent might have raised the disappearance of his gift to K.S.-M. at any proceeding after the minor's first birthday. However, as we explain, respondent's reply to appointed counsel's motion to withdraw is too vague to raise a question of the record's sufficiency.

¶ 36                        A. The Trial Court's Unfitness Finding

¶ 37    Appellate counsel suggests potentially meritorious bases exist to argue the trial court erred in holding respondent was unfit based on his failure to make reasonable progress toward the return of K.S.-M. during two specified nine-month periods and to make reasonable efforts to correct the conditions that were the basis for the removal of K.S.-M. during the same two

nine-month periods. However, a "parent's rights may be terminated if a single alleged ground for unfitness is supported by clear and convincing evidence." *In re D.C.*, 209 Ill. 2d 287, 296 (2004). We thus need only address appellate counsel's contention it would be frivolous to argue the court erred in finding respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to K.S.-M.'s welfare.

¶ 38 A determination of parental unfitness involves factual findings and credibility determinations that the trial court is in the best position to make because "the trial court's opportunity to view and evaluate the parties *** is superior." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 21. "A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48. "A trial court's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." (Internal quotation marks omitted.) *In re N.B.*, 2019 IL App (2d) 180797, ¶ 30.

¶ 39 The State must prove unfitness as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. Section 1(D)(b) of the Adoption Act defines an "unfit person" as, *inter alia*, a parent who has "[f]ail[ed] to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2022).

¶ 40 The Illinois Supreme Court has held that, in addressing a parent's fitness under section 1(D)(b), the trial court "is to examine the parent's efforts to communicate with and show interest in the child, not the success of those efforts." *In re Adoption of Syck*, 138 Ill. 2d 255, 279 (1990). However, section 1(D)(b) does not have a "state of mind" requirement, such that a parent can be unfit under section 1(D)(b) even if the parent's "attempts at maintaining a reasonable degree

of interest, concern, or responsibility are inadequate," stems from "an inability to comply" rather than an unwillingness to comply. *In re M.I.*, 2016 IL 120232, ¶ 26.

¶ 41 Here, the parties presented almost no evidence of respondent's interest, concern, or showing of responsibility for K.S.-M. Both Tonozzi and Spohr testified respondent neither visited the minor while they were involved with the case nor sent letters or gifts. He did not attempt to obtain visitation rights following their suspension early in the case. Respondent's only notable expression of interest came in 2023, after DNA testing demonstrated his paternity. He only then expressed an interest in having Chaddock consider his relatives as a placement for K.S.-M. Beyond that, he merely inquired about K.S.-M.'s wellbeing at the few meetings he attended with caseworkers. Thus, although the evidence showed that respondent expressed an interest in K.S.-M. remaining in his family, it did not show any personal interest, concern, or responsibility by respondent toward K.S.-M. We therefore hold it would be frivolous to argue the trial court's finding that respond was unfit due to a failure to maintain a reasonable degree of interest, concern, or responsibility as to K.S.-M.'s welfare was against the manifest weight of the evidence.

¶ 42 Respondent asserts that he showed interest, concern, and responsibility in that he asked Destiney S. about K.S.-M.'s wellbeing and tried to give shoes and clothing to K.S.-M. In theory, the reports of proceedings not included in the record on appeal might support respondent's contentions. We might thus be forced to consider whether a respondent's reply to appellate counsel's *Anders* motion might require counsel to review a record that includes reports of proceedings beyond the reports of the unfitness and best interest proceeding. See *S.M.*, 314 Ill. App. 3d at 685 (implying that the only reports of proceedings necessary for an adequate record on appeal are those of the unfitness and best interest proceeding). But respondent fails to suggest his concerns were raised in the trial court; if they were not, the absence of additional transcripts is

immaterial. Further, he does not suggest he raised his concerns to his trial counsel or any caseworker. Thus, we deem it unnecessary for either this court or appellate counsel to search the full set of reports of proceedings in this case for indications of ineffective assistance of counsel or false testimony by the Chaddock witnesses. Therefore, although the only report of proceedings in the record on appeal is that of the unfitness and best interest proceedings, we deem the record to be sufficient to hold that respondent's reply does not raise a nonfrivolous issue concerning the fairness of the unfitness finding.

¶ 43                    B. The Trial Court's Best Interest Determination

¶ 44        If a trial court finds a parent to be unfit, it then determines whether the best interest of the child requires that parental rights be terminated. *In re D.T.*, 212 Ill. 2d 347, 352 (2004). At the best interest stage of termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71. The preponderance of the evidence standard is a less stringent standard than the clear-and-convincing standard applicable at the unfitness stage. *In re K.P.*, 2020 IL App (3d) 190709, ¶ 41. We reverse a best interest finding only if it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 85.

¶ 45        In reaching a best interest determination, the trial court must consider, within the context of the child's age and developmental needs, the following factors, which are derived from section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)):

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes

and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." (Internal quotation marks omitted.) *In re J.B.*, 2019 IL App (4th) 190537, ¶ 32.

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. "Other important considerations when deciding a child's best interests are the nature and length of the child's relationship with the present caretaker and the effect that a change of placement would have upon the emotional and psychological well-being of the child." (Internal quotation marks omitted.) *In re Austin W.*, 214 Ill. 2d 31, 50 (invalidated on other grounds by *In re M.M.*, 2016 IL 119932).

¶ 46 In contrast to fitness hearings, at which the Illinois Rules of Evidence apply, "at the best interest portion of the termination hearing *** the trial court may consider 'all evidence helpful *** in determining the questions before the court *** even though that evidence would not be admissible in a hearing where the formal rules of evidence applied.' " *In re M.D.*, 2022 IL App (4th) 210288, ¶ 76 (quoting *In re Jay. H.*, 395 Ill. App. 3d 1063, 1070 (2009)).

¶ 47 Appellate counsel notes that the trial court did not expressly mention any best interest factors in its best interest finding. However, she argues that, because the court need not specifically cite the section 1-3(4.05) factors, its statement of why it was in K.S.-M.'s best interest that respondent's parental rights be terminated was adequate. We agree.

¶ 48 The trial court's comments addressed at least four of the section 1-3(4.05) factors,

and, as approved by *Austin W.*, the length and nature of K.S.-M.'s relationship with his foster parent. The court's statement that K.S.-M. was in the placement he had been in since his birth, approximately two years earlier, addressed the length and nature of his placement. Its statement that he was bonded to his foster mother addressed his sense of attachment. Its statement that all his needs were being met and that the home was safe and appropriate addressed his physical safety and welfare. Its comment that the foster mother's commitment to adoption addressed K.S.-M.'s need for permanence and the preferences of the person available to care for K.S.-M. Finally, its comment about the lack of evidence that either respondent or Destiney S. would ever be appropriate placements was relevant to K.S.-M.'s need for permanence. Notably, Destiney S. had surrendered K.S.-M. for adoption and respondent had not expressed interest in custody of K.S.-M.; he had merely expressed interest in having K.S.-M. placed with an unspecified relative of his. Given the evidence of the stability and appropriateness of K.S.-M.'s placement at the time of hearing and both respondent's and Destiney S.'s lack of interest in custody of K.S.-M., it would be frivolous to argue the best interest finding was against the manifest weight of the evidence.

¶ 49        Respondent asserts that irregularities occurred early in the case. He specifically claims that K.S.-M.'s placement was the result of the foster parent's work in the hospital where K.S.-M. was born and her friendship with a caseworker. To the extent the claimed irregularities had any relevance to K.S.-M.'s best interest, the relevance was to whether the placement was the best that could be made at the time of his birth. The section 1-3(4.05) factors do not relate to what might have been done better in the past. Even if we entertain the possibility that some relative of respondent's—one not named in the reply—would have been the better placement for K.S.-M. when he was born, we see no way that this would have been dispositive at the best interest hearing two years later. A hypothetical placement that might have been plausible at the start of the case

would, two years later, unreasonably delay permanency. Any argument based on these contentions of respondent's would thus be frivolous.

¶ 50　　　　Because we agree this appeal presents no potentially meritorious issues for review, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment. We note that respondent's response to his attorney's *Anders* motion to withdraw requests that we appoint him new counsel. Respondent has a right to appointed counsel in this matter, but he does not necessarily have a right to appointment of counsel of his choosing. We judge that counsel's *Anders* motion shows that she has performed the duties owed to respondent in assessing whether there are non-frivolous issues that might be raised here, and we agree with counsel that there are none. Respondent presents no authority to suggest that he is entitled to appointment of new counsel in a case where we have found that there are no possible non-frivolous issues to be presented.

¶ 51　　　　　　　　　　　　　III. CONCLUSION

¶ 52　　　　For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 53　　　　Affirmed.